WCG

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin ▼

_____Green Bay_____ Division

U.S. District Court
Wisconsin Eastern

FEB 24 2026

FILED
Clerk of Court

| | | |
|---|---|---|
| Rebecca A. Spilker | ) | Case No. 26-cv-315 |
| | ) | *(to be filled in by the Clerk's Office)* |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | Jury Trial: *(check one)*  ☐ Yes  ☑ No |
| -v- | ) | |
| Rock Garden Weddings & Event Venue | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.     The Parties to This Complaint**

**A.     The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Rebecca A. Spilker |
| Street Address | 2551J Telluride Trail |
| City and County | Green Bay, Brown |
| State and Zip Code | WI, 54313 |
| Telephone Number | 920-360-0282 |
| E-mail Address | rebecca.a.spilker@gmail.com |

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Aaron Wolf |
| Job or Title *(if known)* | Director of Sales & Marketing |
| Street Address | 1951 Bond St |
| City and County | Green Bay, Brown |
| State and Zip Code | WI, 54303 |
| Telephone Number | (920) 405-1951 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Clinton del Marcelle |
| Job or Title *(if known)* | Director of Food & Beverage |
| Street Address | 1951 Bond St |
| City and County | Green Bay, Brown |
| State and Zip Code | WI, 54303 |
| Telephone Number | (920) 405-1951 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Rock Garden Wedding and Event Venue |
| Street Address | 1951 Bond St |
| City and County | Green Bay, Brown |
| State and Zip Code | WI, 54303 |
| Telephone Number | (920) 405-1951 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:
FLSA

☑ Relevant state law *(specify, if known)*:
Common Policy Violation

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [✓] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [ ] Unequal terms and conditions of my employment.
- [✓] Retaliation.
- [ ] Other acts *(specify)*: _____

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
**Between 3/20/2025 and 4/13/2025**

C. I believe that defendant(s) *(check one)*:

- [ ] is/are still committing these acts against me.
- [✓] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [ ] race
- [ ] color
- [ ] gender/sex
- [ ] religion _____
- [ ] national origin _____
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [ ] disability or perceived disability *(specify disability)*

E. The facts of my case are as follows. Attach additional pages if needed.

My employment was terminated by Aaron Wolf and Clint Del Marcelle after nearly 6 years of highly praised service when I reported a fellow bartender for concealing tips and overserving/overpouring alcohol on multiple occasions. The final incident occurred on 3/20/2025 after which my hours were reduced, and ultimately eliminated, without legitimate explanation. On 4/11/2025, I consulted with the DOL about the reduction in hours and was advised that the behavior was retaliation. As soon as management at Rock Garden learned I talked with the DOL, my employment was essentially terminated - my scheduled hours were at zero and I received no communication from them.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
10/20/2025
(Inquired about the situation with DOL on 4/11/2025 but wanted to give them time to "right their wrong". They did not, so I filed with EEOC)

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 12/11/2025 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Aaron Wolf, Director of Sales & Marketing at Rock Garden, & son of the owners, along with Clinton del Marcelle, Director of Food & Beverage at Rock Garden terminated my employment for reporting a coworker, another bartender, had continued to overpour beverages, thereby creating a risk for the customers and creating liability for the establishment as well as stealing from the business (lost revenue and product). I had pointed the situation out numerous times to managers but nothing ever got done - other than being told, we'll address it.

I began working at Rock Garden banquet bartending in approximately November of 2020. Since then, I received numerous compliments from customers, including company owners and executives, long-time family friends of the owners, and praise from the owner's daughter in law – Jamie Wolf - for an event I had worked hosted by the company she worked for. She and her colleagues were so impressed, she made it a point to tell me in person, in front of her husband, Aaron, how wonderful they felt I was and how impressed they were with how I never stopped moving and ran circles around the other bartenders. I received compliments for my professionalism, problem resolution, and service skills. I was never written up or made aware of any complaints against me.

Over the years, I was tasked with training nearly all new bartenders. I knew the POS better than some managers. I had the respect of my coworkers and managers I reported to. I routinely came in last minute to cover shifts for others who called in, or didn't show up – even on holidays.

I had witnessed turnover and employee terminations. I would report concerns I witnessed to management and most of the time they were addressed. All in all, it was pretty decent.

Then came Nick. Nick was a challenge to work with. He did not listen to management. He did what he wanted, when he wanted. He would take stock from the other bar/revenue center and stash it so others, including managers, couldn't find it. He moved stock to places it had never been before and didn't let people know. He would hide things out of reach of the majority of other bartenders. He would charge incorrect prices for alcohol/drinks. When he was provided a price list, he questioned where it came from and said he wouldn't follow it until he got the information from Clint. He would use the incorrect amount of alcohol in drinks and not inform the customers. He moved different glassware into the bar. Glassware we had been told numerous times was not to be used in the banquet bars due to the risk of overpouring. When the glasses were removed from the bar, he'd put bring them back. When I trained new bartenders, I would make it a point to explain the difference in the wine glasses – the ones we were supposed to use and the other glasses - and how to properly pour in each. Most followed the guidelines for safe alcohol service. Not Nick. He would repeatedly overpour wine in the glasses we were not

supposed to use. I brought the issues to management attention numerous times, some in real time, others via text with photos, and some after a shift. Over and over, I was told it would be addressed. It wasn't – or if it was, nothing changed. Then one day I noticed that he would hide signed credit card slips and not close them out until the end of his shift, generally the end of the night. The rule was to close the tabs and put the tip amount, in cash, into the pooled tips and split the tips each time a bartender was cut, or sent home. By not closing his slips until the end of his shift, he was stealing tips from the coworkers who left before him. He'd get really mad if someone, including managers, closed his slips and put the tips in the tip pool. I don't know how long that went on, but it never stopped.

On March 21, 2025, the owners and sons, all involved in the family business as management of some sort, were attending that day's event. They were sitting at a table, not far from the bar. That day I happened to notice very obvious overpouring for two customers in a row. This was a "hosted" event meaning the company putting on the event paid for the beverages, not the individuals. I snapped two pictures (one of each incident) and sent them to management and went about serving customers. Shortly after, Adam Wolf, one of the sons – and a manager of another property – came up to the bar to order for the family. One of the examples of overpouring was about 12 inches away from where we were standing so I asked him if it looked like a heavy pour. He agreed. I asked him if he and the family could monitor - not do anything, just be aware. He understood the financial impact of overpouring but I'm not sure if he understood the safety or liability involved. Regardless, I served his drinks and went about working. A couple hours later I had to go to the office for something, change, I think. While in there, my direct managers asked me what I said to Adam. I told them. They said they got scolded because I talked to the family and not my managers - supposedly did not follow chain of command, something Nick ignored regularly. (Mind you, I had talked to the family numerous times in the past and it had never been an issue. I had also alerted the managers to tips and overpouring situations but nothing ever changed. Overpouring is not only stealing from the company, it's a health and safety issue, and a liability. Nick never had a bartending license and this was his first bartending job.) I acknowledged what they said to me, and went back to working. I worked until the end of the event, including clean up. All seemed well, nothing else was ever mentioned.

After the prior nights event (3/20/25), my manager and I went through the events for April and determined what dates I'd be needed to work. We had agreed that I would work on April 5, 10, 14, and possibly 4/25.

When the schedule was published the next week, I was not on the schedule for 4/5. When I asked why, I was told things changed and I wasn't needed, yet less senior bartenders were

scheduled in my place. On April 6, after the next schedule came out and I was not scheduled for 4/10, I asked again, what was going on; again, was told business needs changed, yet again, less senior bartenders were scheduled – in fact, as far as I know, everyone else was scheduled AND another bartender had asked me why I wasn't working. On April 7, I asked if I would be scheduled for the 14th. I didn't get an answer for days. On April 11, I asked what was really going on and if my lack of hours was in response to me alerting the owners to Nick's overpouring. About two hours later, I finally got a response and was told I should contact Aaron and Clint. I took a couple days to think and on 4/13, I let her know I wasn't comfortable calling them since I was just scolded for talking to them and would prefer that they reach out to me if they need to talk to me. At that time, I also let her know that I had inquired with the DOL about what had been happening and that I had received a call back from the DOL confirming the actions (reduction in hours) were indeed retaliatory. I also let her know that the DOL advised that any further adverse treatment would also be considered retaliation. She said she'd relay the message to her direct supervisor. I never heard from any of them after that and was never scheduled again. My personnel file was spotless. I was consistently the one to come in last minute when others called off or didn't show up, even on holidays.

The business that hosted the event on 3/21/25 was known for including extra gratuity when they paid their final bill. I never received any additional gratuity for that event.

I have since learned that Nick is now, or had been, dating one of the managers.

Back & Front Pay/Lost Wages = $20,000 (based on 1Q25 earnings)
Compensatory Damages = $20,000 (for depression and anxiety)
Punitive Damages = $50,000
Total = $90,000

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 02/23/2026

Signature of Plaintiff

Printed Name of Plaintiff    Rebecca A. Spilker

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address